IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

No. 1:22-mc-00023

WILLIAM ZIEGLER and VICKI ZIEGLER

    Plaintiffs,

  v.

POLARIS INDUSTRIES INC., a Minnesota Corporation,

    Defendants.

## POLARIS INDUSTRIES INC.'S RESPONSE TO NON-PARTY ERIC KIPP'S MOTION TO QUASH SUBPOENA TO MISSION HEALTH

This matter arises from a single-vehicle drunken driving crash that occurred shortly after 1:00 a.m. on Thanksgiving morning, 2019. Eric Kipp, the movant here, caused the accident when he missed a bend in the road while driving a 2018 Polaris Ranger 570 UTV in Sylva, North Carolina. Mr. Kipp's negligence caused the Ranger to launch down a 10-foot, rocky embankment into a creek. Tragically, Mr. Kipp's passenger – his brother-in-law, William Ziegler – was paralyzed from the chest down as a result of the crash.

Mr. Ziegler and his wife filed suit against Polaris and Mr. Kipp in the U.S. District Court for the Western District of Michigan (1:2021cv00956), alleging negligence theories against both parties and products liability theories against Polaris. Among Polaris's defenses, it contends this was an entirely preventable drunken driving crash caused by Mr. Kipp, and that Mr. Ziegler was contributorily negligent for riding in a vehicle with someone he should have known was impaired.

The issue before the Court here is whether Polaris is entitled to limited medical records reflecting Mr. Kipp's blood alcohol content shortly after the crash. For the reasons stated below,

these records are critical to Polaris's ability to fairly defend itself at trial, and therefore, Polaris is entitled to these records in the interests of justice. Mr. Kipp's Motion to Quash should be denied.

The circumstances of the crash and Plaintiffs' allegations in the underlying litigation strongly suggest that alcohol was involved. The date and time alone – after midnight on Thanksgiving morning after a family gathering – supports this theory. Mr. Ziegler was so intoxicated that paramedics noted in their records that he smelled of alcohol (*see* Paramedic Report at pp. 2–3, attached hereto as **Exhibit A**.), and his blood alcohol content at the hospital over an hour after the crash was .215. (*See* Lab Report, attached hereto as **Exhibit B**.) At his deposition, Mr. Ziegler remembered very little about his own alcohol consumption that night but did testify that he brought his own 12-pack of beer to Mr. Kipp's house and that he tried moonshine earlier in the evening before the crash. (*See* Ziegler Dep. at 118:24–120:6, 128:4–8, attached hereto as **Exhibit C**.) Mr. Ziegler testified that he could not recall anything related to Mr. Kipp's alcohol consumption the evening and early morning before the crash. (*Id.* at 130:2–14.) But he did admit that he and Mr. Kipp stayed up talking alone late into the night before the crash. (*Id.* at 124:2–126:19.) Plaintiffs also sued Mr. Kipp, alleging that his negligence caused the crash and Plaintiffs' injuries. (*See* Compl. at ¶¶ 19–21, attached hereto as **Exhibit D**.) In interrogatory responses, Plaintiffs stated that Mr. Kipp's "consumption of alcohol in the hours before the crash may have contributed to the crash." (*See* Ziegler Resp. to Interrog. 15, attached hereto as **Exhibit E**.)

While a party to the lawsuit, Mr. Kipp's counsel delayed responding to Polaris's discovery until Mr. Kipp settled with Plaintiffs—and then refused to respond to Polaris's long-pending discovery requests. Now Mr. Kipp does not want Polaris to learn his blood alcohol content because, as Mr. Kipp's Michigan counsel admitted in a moment of candor, Mr. Kipp does not want to "torpedo" his family member's case. (*See* Decl. of M. Nirider at ¶ 18, attached hereto as **Exhibit F**.) Because Mr. Kipp would not sign authorizations for the release of his blood alcohol content,

2

Polaris subpoenaed Mission Hospital in Asheville, North Carolina, the hospital where Mr. Kipp was treated after the crash. Polaris's requests are narrowly tailored and seek only two narrow categories of medical records: (1) records related to Kipp's blood alcohol content ("BAC") during the time of the crash, and (2) records sufficient to identify the location and severity of Kipp's acute injuries so that Polaris's expert has data for accident reconstruction purposes. The Western District of Michigan previously entered a protective order that will protect the confidentiality of these records, so Mr. Kipp should have no concerns related to confidentiality. (*See* Stipulated Protective Order, attached hereto as **Exhibit G**.) Nonetheless, Mr. Kipp moved to quash Polaris's subpoena to Mission Hospital, asserting the patient-physician privilege over the narrow records Polaris seeks. Mr. Kipp's motion to quash should be denied for three reasons.

*First*, neither North Carolina nor Michigan law permits an impaired driver to use the physician-patient privilege as a shield to prevent the production of records related to his intoxication.[1] In other words, on the key piece of evidence Polaris seeks, the Court need not engage in a full choice-of-law analysis because the outcome would be the same under either state's law: Polaris should receive the records which go to the heart of what really caused the crash and which are important to Polaris's defense of this case.

*Second*, both North Carolina and Michigan law allow Polaris to obtain records sufficient to identify the location and severity of Mr. Kipp's injuries. These documents are necessary to a reconstruction of the accident – the location and nature of a vehicle occupant's injuries can tell reconstruction and biomechanics experts a great deal about the vehicle's speed and behavior during the crash sequence, as well as the forces involved.

---

[1] As argued below, Mr. Kipp's assertion of the patient-physician privilege implicates a choice-of-law issue, namely which state's law applies to the assertion of privilege over medical records located in North Carolina related to treatment obtained in North Carolina by a then-North Carolina resident as a result of a crash that happened in North Carolina. Both North Carolina and Michigan law give the same outcome – that the records must be produced. Accordingly, the Court need not conduct a full choice-of-law analysis in resolving Mr. Kipp's assertion of privilege.

3

*Finally*, equitable considerations here weigh heavily in favor of Polaris obtaining production of these medical records. Plaintiffs placed Mr. Kipp's alcohol consumption at issue in this case when they sued him for negligence. Plaintiffs are unable to recall the details of Mr. Kipp's alcohol consumption in the hours before the accident. And North Carolina law, which Polaris believes may ultimately govern the underlying litigation, provides Polaris with a complete defense if Mr. Ziegler rode in a vehicle with a driver who he should have known was impaired. In any event, evidence of the driver's intoxication is highly relevant, and the jury is entitled to hear this evidence when it looks to apportion fault for this tragic crash. In other words, Mr. Kipp's blood alcohol content is incredibly important to Polaris's ability to fairly defend itself in this case. Finally, Polaris is aware that Mr. Kipp has recently suffered a serious health issue. Polaris hopes that Mr. Kipp will have a speedy and complete recovery. However, even a possibility that Mr. Kipp will be unable or limited in his ability to testify due to this issue is a further reason for the Court to deny Mr. Kipp's motion to quash.

## FACTUAL BACKGROUND

This is a drunken driving case where the driver's medical records are highly relevant and critical to Polaris's ability to fully and fairly defend itself at trial. Accordingly, Polaris first requested Mr. Kipp's medical records while Mr. Kipp was still a party. Polaris requested HIPAA-compliant authorizations from Mr. Kipp for his medical records on April 13, 2022. (Ex. F, Nirider Decl. at ¶ 3.) Before Mr. Kipp's deadline to respond to Polaris's discovery requests, which would have required him to serve HIPAA-compliant authorizations allowing Polaris to obtain his medical records, his counsel requested a two-week extension in which to respond. (*Id.* ¶ 6.) Polaris granted that request. (*Id.* ¶ 7.) Then, on May 20, 2022, just before Mr. Kipp's extended response deadline, Plaintiffs' counsel informed Polaris that Plaintiffs had settled with Mr. Kipp and would dismiss him from the case. (*Id.* ¶ 13.) Polaris's counsel asked Mr. Kipp's counsel if he could simply

4

respond to the party discovery imminently due to save the time and expense of reissuing discovery in the form of a Rule 45 subpoena. (*Id.* ¶ 16.) Mr. Kipp refused to do so, his counsel informing Polaris's counsel that Mr. Kipp did not want to "torpedo" his family member's case. (*Id.* ¶ 18.)

Subsequently, Polaris issued third-party subpoenas to both Mr. Kipp and to Mission Hospital seeking two narrow categories of medical records (or in the case of Mr. Kipp, authorizations that would allow Polaris to obtain those records): toxicology records reflecting Mr. Kipp's blood alcohol content in the immediate aftermath of the crash and documents sufficient to identify the location and nature of Mr. Kipp's injuries to assist with accident reconstruction. Kipp objected to production of the requested medical records on physician-patient privilege grounds. He then filed the motion to quash now before this Court.

## ARGUMENT

The evidence points to this being a drunk driving incident resulting in a single-vehicle crash, which caused serious injuries for the passenger and Plaintiff, William Ziegler. Polaris's position in this case is that Mr. Kipp's negligent and drunken driving – not some alleged defect or negligence on Polaris's part – caused this single-vehicle crash. The driver, Eric Kipp, invokes privilege to frustrate any attempt by Polaris to obtain copies of his medical records stemming solely from this crash related to both his blood alcohol content and acute injuries. Kipp wrongfully claims that privilege law in both Michigan and North Carolina provide essentially an absolute bar to Polaris accessing the records. Polaris is entitled to Mr. Kipp's blood alcohol content not only because it goes to one of Polaris's defenses in this case. As importantly, the trier of fact is entitled to a complete understanding of what happened here as it apportions fault. In other words, it is fundamentally in the interests of justice that Polaris and the trier of fact learn about Mr. Kipp's blood alcohol content.

5

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 404 (6th Cir. 2019) (quoting FED. R. EVID. 501). Though every event related to this crash took place in North Carolina, Polaris is entitled to Kipp's BAC records regardless of whether Michigan or North Carolina law applies. The Court should also deny the motion to quash regarding Kipp's medical records related to his acute injuries, as they are necessary to the proper administration of justice and are subject to a protective order that will confine the use of any such records to this litigation. Finally, equitable considerations also favor the admission of this relevant evidence because it is critical to Polaris's ability to fully and fairly defend itself at trial.

A.  **Polaris is entitled to Kipp's BAC records under either Michigan or North Carolina law.**

The Court need not decide between Michigan and North Carolina law in order to deny the motion to quash and permit Mission Hospital to comply with the subpoena and produce Kipp's medical records. Both North Carolina and Michigan have physician-patient privileges governed by statute, and both states' laws have explicit exceptions to the patient-physician privilege that would allow Mission Hospital to produce the requested records here. Because there is no genuine conflict between substantive state laws, the Court need not make a choice-of-law determination on this issue. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883 n.5 (6th Cir. 2021). Each of the states are clear in permitting disclosure of medical records regardless of privilege when the records are relevant to a driver's intoxication level at issue in the case.

*North Carolina*

Mr. Kipp's recitation of the North Carolina patient-physician privilege statute included this language:

> No person, duly authorized to practice under Article 1 of Chapter 90 of the General Statutes, shall be required to disclose any information which he may have acquired in

6

> attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act as a surgeon, an no such information shall be considered public records under G.S. 131-1. Confidential information contained in medical records shall be furnished only on the authorization of the patient.

(Kipp Mem. at 5.) However, Mr. Kipp omitted the following key language from the same statutory section demonstrating that the privilege is not absolute: "Any resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice." N.C.G.S. § 8-53. That is, if disclosure of privileged material is "necessary to the proper administration of justice," then the Court may compel its disclosure. *Id.*

Here, Mr. Kipp's blood alcohol content is absolutely necessary to the proper administration of justice, fundamental fairness, and Polaris's ability to receive a fair trial. In any vehicle crash – particularly a single-vehicle crash – evidence of intoxication is critically important and highly relevant to determining what happened and how to apportion fault. This highly relevant information should be available to the parties, and, equally importantly, to the trier of fact. Accordingly, courts in North Carolina routinely order production of relevant medical records for allegations of impaired driving. *See Roadway Express, Inc. v. Hayes*, 631 S.E.2d 41, 45-46 (N.C. Ct. App. 2006) (affirming trial court's order compelling records); *Rasberry v. Jacobs*, 772 S.E.2d 873 (Table), at *4 (N.C. Ct. App. 2015) (affirming trial court's compelling production of records for allegations of driving while impaired even when party did not waive the physician-patient privilege); *Carrazana v. W. Express, Inc.*, 782 S.E.2d 926 (Table), *5-7 (N.C. Ct. App. 2016) (affirmed trial court's order to produce broad range of medical documents based on allegations of impaired driving).

Here, Polaris expects that Mr. Kipp's blood alcohol content was measured at the hospital after the crash. Thus, Polaris expects that this critical piece of information is readily available in

7

that form. Moreover, in this case, while the circumstantial evidence supports Mr. Kipp's intoxication, Mr. Ziegler lacks knowledge of Mr. Kipp's alcohol consumption leading up to the crash. He also has very little memory of the hours preceding the crash. Mr. Kipp's blood alcohol content could allow a finder of fact to determine, as a matter of law, that Mr. Ziegler was negligent to ride in the vehicle with Mr. Kipp. Mr. Kipp's intoxication is highly relevant and is a powerful defense for Polaris in this case – as Mr. Kipp and his counsel are well aware. Polaris is entitled to rely on this defense at trial, and the trier of fact is entitled to this information to apportion fault, but both need Mr. Kipp's blood alcohol content to do so. The interests of justice would suffer, and Polaris would face real prejudice to its ability to fairly defend itself at trial without this information.

***Michigan***

Michigan law carves out an even more express exception to the patient-physician privilege for drunk drivers. MCL 257.625a(6)(e) provides as follows:

> If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, ***the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or other intoxicating substance in the person's blood at the time alleged***, regardless of whether the person had been offered or had refused a chemical test.

(emphasis added). Further, Michigan courts have held that "an individual does not have a reasonable expectation of privacy in the results of a blood alcohol test taken for medical purposes when that individual was involved in an automobile accident." *Hullett v. Smiedendorf*, 52 F. Supp. 2d 817, 823 (W.D. Mich. 1999) (citing *People v. Perlos*, 462 N.W.2d 310, 314 (1990)). The Michigan Supreme Court in *Perlos* stated, "[W]e are persuaded that in Michigan, under subsection 9, the Legislature does not consider reasonable an expectation of privacy in blood alcohol test results. *The Legislature decided to abrogate the physician-patient privilege* by granting prosecutors access to test results." 462 N.W.2d at 319 (emphasis added). Under Michigan law,

8

there is no ambiguity – the patient-physician privilege does not bar the disclosure of blood alcohol content, those results are admissible at trial, and individuals do not have reasonable expectations of privacy in those results.

Under either Michigan or North Carolina law, the result is clear: Polaris is entitled to Kipp's medical records related to his blood alcohol content. Kipp does not cite any contrary law. Instead, he merely presents authorities that stand for general propositions of physician-patient privilege, while omitting specific statutory language and case law going directly to the question whether the patient-physician privilege protects from disclosure the blood alcohol content of the driver of a vehicle involved in a crash. The law in both Michigan and North Carolina expressly allows the disclosure of this critical piece of information.

**B.     The Court should compel production of records reflecting the location and nature of Mr. Kipp's injuries from the crash.**

There is likewise no conflict between North Carolina and Michigan law on whether Polaris can obtain medical records sufficient to identify the location and nature of Mr. Kipp's injuries from the crash. North Carolina and Michigan law follow different technical pathways to achieve the result, but the outcome is the same under either state's law. In North Carolina, the patient-physician privilege statute itself expressly authorizes a judge to order the production of medical records if "disclosure is necessary to a proper administration of justice." N.C.G.S. § 8-53. Disclosure here is necessary to a proper administration of justice because the location and nature of Mr. Kipp's injuries can help Polaris and Plaintiffs reconstruct the crash to get at the truth of what happened during a chaotic crash event that Mr. Ziegler certainly does not remember well. Information regarding the nature of Mr. Kipp's injuries may provide an ability to reconstruct the accident, which is especially important here given that the vehicle was sold by Mr. Kipp prior to the filing of the Plaintiffs' lawsuit and witness memories are limited. Because North Carolina's privilege

9

statute permits such disclosure, the Court should deny the motion to quash as to records reflecting Mr. Kipp's acute injuries as well. *See Brewer ex rel. Leach v. Hunter*, 762 S.E.2d 654, 657–59 (N.C. Ct. App. 2014) (affirming motion to compel non-party patient records as relevant and "necessary to a proper administration of justice").

Though it follows a more circuitous route, Michigan law also authorizes the production of these records because Michigan patient-physician privilege law is preempted by HIPAA. *Thomas v. 1156729 Ontario Inc.*, 979 F. Supp. 2d 780, 782–83 (E.D. Mich. 2013). HIPAA authorizes the disclosure of medical records in litigation where a protective order is in place that would protect the records from further disclosure. *See* 45 CFR § 164.512(e)(1)(ii)(B). Federal courts have found that HIPAA preempts Michigan's patient-physician privilege law. *Thomas v. 1156729 Ontario Inc.*, 979 F. Supp. 2d 780, 782–83 (E.D. Mich. 2013); *see also Teran v. Serblowski*, 2010 WL 11688414 (W.D. Mich. Nov. 18, 2010) (HIPAA preempts or supersedes State law to the extent it is inconsistent with a HIPAA "standard, requirement, or implementation specification.") Therefore, if HIPAA would allow these records to be produced (which it does), then Michigan law would also. There is no question that HIPAA would permit production of these records, as they would be used solely for this litigation, and a protective order is in place that would protect the documents from disclosure. *See* 45 CFR § 164.512(e)(1)(ii)(B). Given the *Thomas* ruling above, and the fact that these are a narrow set of documents geared only at recreating the crash, the Court can and should find that Michigan law, consistent with HIPAA, allows for the disclosure of records reflecting the nature and location of Mr. Kipp's injuries from the crash.

**C.     Equitable considerations weigh in favor of production of these records.**

Finally, equitable factors weigh heavily in favor of the production of the requested medical records. The blood alcohol records are highly significant to determining the truth of what happened and to Polaris's ability to fairly defend itself at trial. Indeed, they may give rise to a total defense

10

to Plaintiffs' claims, depending on Mr. Kipp's level of impairment at the time of the accident. Polaris is entitled to present evidence from which a finder of fact could determine that Kipp was so intoxicated that Ziegler knew or should have known he was impaired. A hospital blood alcohol record represents the most precise and objective possible proof on this question. It allows the trier of fact to apportion fault based on objective information and allows Polaris to fully defend itself at trial. Finally, Kipp is not just a random third party. Kipp drove the vehicle – his vehicle – and Plaintiffs sued him and put his alcohol consumption squarely at issue in this case. Indeed, his alcohol consumption is likely the primary reason that Mr. Kipp's insurance company settled this case. The Court should not countenance a tactic whereby Plaintiffs sue someone for driving drunk, settle with that person, and then prevent other defendants from obtaining evidence of just how drunk the person was. This is particularly true when this evidence is squarely at issue in this case and key to Polaris's ability to fairly defend itself against Plaintiffs' claims.

## CONCLUSION

For all the reasons stated above, Polaris respectfully requests that this Court deny Mr. Kipp's motion to quash.

September 27, 2022

Respectfully Submitted,

/s/James M. Dedman, IV
James M. Dedman, IV (N.C. Bar No. 37415)
GALLIVAN, WHITE, & BOYD, P.A.
6805 Carnegie Blvd., Suite 200
Charlotte, NC 28211
704-552-1712
jdedman@gwblawfirm.com

*Attorneys for Polaris Industries, Inc.*