IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-mc-00023-MR-WCM

| | |
|---|---|
| WILLIAM ZIEGLER, <br> VICKI ZIEGLER, <br><br> Plaintiffs, <br><br> v. <br><br> POLARIS INDUSTRIES INC., <br><br> Defendant. | ORDER |

This matter is before the Court on the following motions:

1. Non-Party Eric Kipp's Motion to Quash Defendant Polaris Industries, Inc.'s Subpoena to Mission Health (the "Motion to Quash," Doc. 1); and

2. Plaintiffs William Ziegler and Vicki Ziegler's Motion to Transfer Subpoena-Related Motion to Issuing Court (the "Motion to Transfer," Doc. 5).

I. The Underlying Litigation

The filings concerning these matters indicate as follows:

At approximately 1:15 AM on November 28, 2019, Eric Kipp ("Kipp") was driving a Polaris Ranger all-terrain vehicle ("Vehicle") in Jackson County, North Carolina. Doc. 4-4 at 3.

Kipp's brother-in-law, William Ziegler ("Ziegler"), was a passenger in the Vehicle. The Vehicle left the roadway, traveled down an embankment, and into a nearby creek. Ziegler sustained serious personal injuries and Kipp sought and received medical attention at Mission Hospital ("Mission") in Asheville, North Carolina. Doc. 1 at 2.

On November 10, 2021, Ziegler and his wife Vicki (collectively "Plaintiffs"), filed suit against Polaris Industries, Inc. ("Polaris") and Kipp in the United States District Court for the Western District of Michigan, in a matter that bears file number 1:21 CV 956 ("Michigan Action"). See Doc. 4-4. Plaintiffs allege that the parties are completely diverse such that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Id.

Kipp later settled with Plaintiffs and moved to dismiss Plaintiffs' claims against him. The presiding judicial officer, the Hon. Jane Beckering, United States District Judge for the Western District of Michigan, allowed the request. Polaris subsequently moved for reconsideration and asked that Kipp be directed to respond to written discovery requests from Polaris that were pending at the time of the settlement between Kipp and Plaintiffs.

By Order filed on August 16, 2022, Judge Beckering denied the motion for reconsideration. Doc. 5-3. In a footnote, the court stated that the appropriate course of action for Polaris at that point was to seek third-party discovery from Kipp rather than moving for reconsideration of the court's order

2

Case 1:22-mc-00023-MR-WCM   Document 12   Filed 11/15/22   Page 2 of 18

dismissing Kipp and for a directive that Kipp be required to respond to discovery which Kipp was no longer obligated to produce. The court went on to state that Polaris had failed to show that third-party discovery or a deposition of Kipp was insufficient. Doc. 5-3 at 2, n. 1.

## II. The Subpoena

On August 24, 2022, Polaris served a document subpoena ("Subpoena") on Mission seeking the following information:

> Any and all DOCUMENTS relating to the medical records of Eric Kipp that relate to the INCIDENT, including but not limited to admission records, emergency room records, doctors' notes, reports and orders, nurses' notes, lab and pathology reports, toxicology records and reports, ambulance, fire/rescue records, and all documents that show the nature and extents (sic) of Eric Kipp's injuries sustained during the INCIDENT.

Doc. 1-1 at 4.

Kipp now seeks to quash the Subpoena. Docs. 1, 2. Polaris has responded in opposition, and Kipp has replied. Docs. 4, 6.

## III. Discussion

### A. The Motion to Transfer

Before addressing the Motion to Quash, though, the undersigned must consider whether a ruling on that motion should be issued in this district. Specifically, by the Motion to Transfer, Plaintiffs request that the Court transfer the Motion to Quash to the United States District Court for the

3

Western District of Michigan pursuant to Rule 45 of the Federal Rules of Civil Procedure. Doc. 5. Both Polaris and Mission[1] have filed responses in opposition, and Plaintiffs have replied. Kipp has also filed a response supporting the Motion to Transfer. Docs. 7, 9, 10, 11.

The Subpoena directed that the documents be produced in Asheville. See Fed.R.Civ.P. 45(c)(2)(A). Rule 45(d)(3)(A) states, in part, that "the court for the district where compliance is required" must quash or modify a subpoena that is improper for certain reasons. Fed. R. Civ. P. 45.

Plaintiffs do not contend that the Motion to Quash has been filed in an improper venue, but rather request that the Motion to Quash be transferred pursuant to Rule 45(f), which provides in part:

> Transferring a Subpoena-Related Motion. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.

Fed. R. Civ. P. 45(f).

Here, Mission, who is the "person subject to the subpoena," has objected to the Motion to Transfer. Doc. 9. Consequently, the Motion to Quash may be

---

[1] In its opposition to the Motion to Transfer, Mission identifies itself as MH Mission Hospital, LLLP.

transferred to the Western District of Michigan only if there are "exceptional circumstances."

"In evaluating whether 'exceptional circumstances' are present, the court considers a number of factors related to the underlying action. These factors include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by the issuing court in the underlying action." Philips North America LLC v. Little, No. 3:22-MC-0096-MOC-DSC, 2022 WL 2517193, at *1 (W.D.N.C. July 5, 2022) (collecting cases); see also Advisory Committee Notes, 2013 Amendment ("In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts").

Here, Plaintiffs argue that transferring the Motion to Quash is appropriate because the court in the Michigan Action will be asked to determine "[w]hether sufficient admissible evidence exists to prove Kipp was

impaired, how that impacts Plaintiffs' products liability case, and whether the jury should consider potentially prejudicial evidence...." Doc. 5 at 2. These arguments, however, go to the admissibility and weight of the documents sought by the Subpoena, rather than the narrower question of whether the documents are discoverable.

Next, although Plaintiffs assert that transfer is appropriate because Kipp is "presently a Michigan resident," Doc. 5 at 6, the accident occurred in this district, Kipp sought and received medical treatment here, the medical records are located in this district, and Mission states that it "has no presence whatsoever in Michigan." Doc. 9 at 7.

Additionally, although Plaintiffs raise concerns about "conflicting rulings" on the question of whether Kipp's records are privileged – since Kipp has also objected to a subpoena seeking medical records from him directly – it does not appear that Kipp has filed a motion to quash, or that Polaris has filed a Motion to Compel compliance with that subpoena, in the Michigan Action. See Doc. 10 at 7.[2]

---

[2] On November 1, 2022, the parties filed a Joint Stipulation to Amend Case Management Order (the "Motion to Amend") in the Michigan Action. 1:21 CV 956, Doc. 231. That filing suggests that the parties anticipate litigating the question of whether Kipp's medical records are protected by the physician-patient privilege via the Motion to Quash filed in this Court. See id. at 2, 3 (stating that Kipp "has objected on physician-patient privilege grounds to the subpoenas seeking his medical records," that the Motion to Quash and Motion to Transfer have been fully briefed, and that "[o]nce the Parties have orders on [the Motion to Quash and Motion to Transfer], the

6

Finally, although Plaintiffs assert that because Kipp is "presently a Michigan resident and presently exercising his rights to protect his medical records," "Michigan law should control and the Michigan trial judge is in the best position to provide a correct analysis of Mr. Kipp's medical privileges," neither Kipp nor Plaintiffs, in the context of the Motion to Transfer, have provided authorities that indicate that the Subpoena must be analyzed under Michigan law, even if the Motion to Transfer were allowed.[3] See Bogard Construction, Inc. v. Oil Price Information Service, LLC, Nos. 22-mc-80104-JSC, 22-mc-80107-JSC, 2022 WL 1750379, at *4 (N.D. Cal. May 31, 2022) (applying Maryland's choice of law rules because motions to quash and motions to compel were originally filed in Maryland and then transferred to California pursuant to Rule 45(f)) (citing Ferens v. John Deere Co., 494 U.S. 516, 521 (1990) (holding that law of transferor court governs when venue was proper in the original venue and case was transferred for convenience of the parties); City of Almaty, Kazahkstan v. Ablyazov, 2018 WL 11270080, *1 (S.D.N.Y. July 23, 2018) (applying Pennsylvania law to subpoena dispute filed in Pennsylvania as the state of compliance but then transferred to New York

---

Parties should be able to complete fact discovery promptly thereafter...."). On November 2, 2022, the Motion to Amend was granted, and the deadline for the parties to complete fact/liability discovery in the Michigan Action was extended through and including February 6, 2023.

[3] Similarly, in the context of the Motion to Quash, neither Kipp nor Polaris takes a specific position regarding whether Michigan or North Carolina law should apply.

pursuant Rule 45(f)). Similarly, neither Kipp nor Plaintiffs have provided any case law finding that a privilege issue constitutes an exceptional circumstance for purposes of Rule 45(f).

Under these circumstances, the undersigned is not persuaded that the Motion to Quash should be transferred.

### B. The Motion to Quash

Kipp contends that the Subpoena should be quashed because it seeks documents—specifically his medical records—that are subject to the physician-patient privilege under either North Carolina or Michigan law. He states that he has not waived that privilege and has objected to requests for his medical records, including a subpoena served by Polaris on Kipp directly and "during depositions of individuals that could have been considered medical providers." Doc. 2 at 4.

In response, Polaris argues that it is entitled to Kipp's medical records, again under either North Carolina or Michigan law, because the information may reveal Kipp's blood alcohol content at the time of the crash and further because it may reflect the location and nature of his acute injuries which

Polaris needs for accident reconstruction purposes. Polaris also contends that equitable considerations weigh in favor of requiring production of the records.[4]

### 1. Applicable Law

Both Kipp and Polaris agree that state law relative to the physician-patient privilege should control the analysis. Cf. Mojarrad v. City of Raleigh, North Carolina, No. 5:20-CV-396-FL, 2021 WL 8824945, at *3 (E.D.N.C. June 8, 2021) (applying federal common law to the question of physician-patient privilege where jurisdiction was based on a federal question); see also Fed.R.Evid. 501. Neither Kipp nor Polaris, however, takes a definitive position on which specific state's law should apply.[5]

When faced with an issue of privilege that is to be decided pursuant to state law, federal courts use the choice of law principles of the forum state to determine which specific state's privilege law should be applied. Small v. Welldyne, Inc., No. 5:16-CV-00062-BO, 2017 WL 2484181, at *3 (E.D.N.C.

---

[4] In their reply in support of the Motion to Transfer, Plaintiffs assert that "[w]hile Polaris speculates it will find evidence of alcohol consumptions [sic] within Kipp's records, it's more likely to find a record from a hospital chaplain providing comfort to an injured patient grieving over whether he would ever talk to his long-time friend and brother-in-law." Doc. 10 at 2. Kipp has not, however, asserted any privilege based on discussions with a chaplain.

[5] Kipp references both North Carolina and Michigan law in his briefing, while Polaris contends that the "Court need not decide between Michigan and North Carolina law" because both states "have physician-patient privileges governed by statute, and both states' laws have explicit exceptions to the patient-physician privilege that would allow Mission Hospital to produce the requested records here." Doc. 4 at 6.

9

June 8, 2017) ("When an issue arises for which a state's privilege law applies, courts apply the choice of law principles of the forum state"). Here, pursuant to Rule 45(d)(3), Polaris was required to file the Motion to Quash in this district. Therefore, the undersigned considers North Carolina to be the "forum state" for purposes of this miscellaneous action and applies North Carolina's choice of law rules to determine whether Michigan or North Carolina law should govern the privilege analysis. See Metric Constructors, Inc. v. The Bank of Tokyo-Mitsubishi, Ltd., No. 5:97–CV–369BR1, 1998 WL 1742589, at *1 (E.D.N.C. Sept. 28, 1998) (applying North Carolina's choice of law rules to determine whether North Carolina or New York law governed an attorney-client privilege dispute because "in diversity cases federal courts must follow the conflict of laws rules prevailing in the states in which they sit") (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941)); see also Wolpin v. Philip Morris Inc., 189 F.R.D. 418, 423 (C.D. Cal. 1999) ("persuasive district court cases indicate that where the court hearing the discovery dispute and the court hearing the underlying action differ, the court hearing the discovery dispute must apply the choice of law rules of its forum"); Bogard Construction, 2022 WL 1750379, at *4; City of Almaty, Kazahkstan, 2018 WL 11270080, at *1.

Under North Carolina conflicts of law rules, "matters affecting the substantial rights of the parties" are governed by the law of "the state where

the injury occurred[ ]"; and "remedial or procedural rights" are governed by the law of the forum state. Mitchell v. HCL Am., Inc., 190 F. Supp. 3d 477, 488 (E.D.N.C. 2016) (quoting Boudreau v. Baughman, 322 N.C. 331, 335 (1988)). Here, because the accident occurred in North Carolina, and as the undersigned considers North Carolina to be the forum state for purposes of the Motion to Quash, the undersigned will apply North Carolina law in determining whether the Subpoena should be quashed or modified.

### 2. The Physician-Patient Privilege

North Carolina General Statute § 8-53, "codifies the physician-patient privilege," Mastanduno v. National Freight Industries, 262 N.C.App. 77, 83 (2018), and states, in pertinent part, that:

> Confidential information obtained in medical records shall be furnished only on the authorization of the patient…. Any resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice….
>
> N.C.G.S. § 8-53.[6]

---

[6] While Michigan has also codified the physician-patient privilege, MCL 600.2157, the language of the Michigan statute does not mirror the North Carolina provision. However, considering the undersigned's conclusion that North Carolina law governs, it is not necessary to analyze the Motion to Quash under Michigan law.

11

"The purpose of the physician-patient privilege is 'to induce the patient to make full disclosure that proper treatment may be given, to prevent public disclosure of socially stigmatized diseases, and in some instances to protect patients from self-incrimination." Carrazana v. W. Express, Inc., 246 N.C. App. 188 (2016) (quoting Sims v. Charlotte Liberty Mut. Ins. Co., 257 N.C. 32, 36 (1962)).

However, the statutory privilege is not absolute. It may be waived by the patient or privileged information "may be disclosed by order of the court if in the opinion of the trial judge disclosure is necessary to the proper administration of justice." State v. Drdak, 330 N.C. 587, 591–92 (1992). Courts have wide discretion in determining what is necessary for the proper administration of justice, and the North Carolina Supreme Court has explained that "[j]udges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done." Sims, 257 N.C. at 39 (citation and quotation marks omitted).

Here, Kipp contends that he has not waived the privilege, and Polaris does not argue to the contrary. Therefore, Kipp's records may be produced only if the Court concludes that their disclosure is necessary for the proper administration of justice.

12

Case 1:22-mc-00023-MR-WCM   Document 12   Filed 11/15/22   Page 12 of 18

Polaris states that this case arises from a "single-vehicle drunken driving crash," while Kipp contends that this description is based on "speculation and innuendo." Doc. 4 at 1, Doc. 6 at 1.

Beyond the arguments of counsel, the parties have submitted various documents in support of their positions, including information from Harris Regional Hospital that indicated Ziegler had the smell of alcohol on his breath at the time of the crash, a toxicology report from Mission that showed Ziegler had an ethanol level of .215 at 2:22 AM on November 28, 2019, and excerpts from the transcript of Ziegler's deposition in which he stated that he thought someone at Kipp's house "had some moonshine." See Docs. 4-1, 4-2, 4-3.

Copies of Ziegler's answers to written discovery requests from Polaris have also been submitted. Doc. 4-5. In those answers, Ziegler stated that after their families had gone to sleep on the night of November 27, he and Kipp continued to visit and that sometime after midnight Kipp suggested they go for a drive as he had discovered a picturesque waterfall he wanted to show Ziegler. Doc. 4-5 at 4. Further, Ziegler's answer to Interrogatory 15 stated that Kipp was driving the Vehicle when it left the roadway, that Kipp was responsible for driving the Vehicle safely, that his choice to drive Ziegler in the Vehicle rather than in an automobile was negligent, and that Kipp's "consumption of alcohol in the hours before the crash may have contributed to the crash." Doc. 4-5 at 7.

Also produced are written discovery requests from Polaris to Kipp, which Kipp has not answered, and email correspondence concerning the same. Counsel for Polaris has submitted a declaration describing communications with Kipp's counsel regarding the discovery Polaris had issued to Kipp while Kipp was still a party, including Kipp's counsel's statements that "despite the accident and lawsuit, Plaintiffs and Kipp are family, and Kipp did not wish to produce discovery that would 'torpedo' Plaintiffs' case against Polaris." Doc. 4-6 at 4.

In addition, both Plaintiffs and Kipp have submitted copies of all or a portion of the transcript of the deposition of Tyson W. Crawford, a member of the North Carolina State Highway Patrol who responded to the accident and prepared the associated accident report. Doc. 5-1, Doc. 6-1. Trooper Crawford testified that Kipp, when interviewed a couple of weeks after the accident, stated that both he and Ziegler had consumed some beer but that he (Kipp) was not impaired at the time of the accident. Doc. 5-1 at 22 (84:25-85:2). Trooper Crawford further testified that Kipp was not charged with driving while impaired because Trooper Crawford "never got to speak with him, never got to form an opinion that he was impaired." Id. Trooper Crawford also testified that the ethanol level of .215 shown on the Mission toxicology report, which was based on a sample collected from Ziegler on November 28, 2019, was

14

"really not a .21" because the testing completed by the hospital lab "is different" from the testing completed by the Highway Patrol lab. Doc. 5-1 at 24 (91:8-22).

As noted above, the question presented to the undersigned is whether, pursuant to Section 8-53, the proper administration of justice requires that Kipp's medical records be disclosed in response to the Subpoena.

Answering that narrow inquiry, the Court finds that some disclosure is appropriate, but not to the extent described by the Subpoena. Specifically, the undersigned is not persuaded that Polaris has made a sufficient showing to support the disclosure of Kipp's records for the purpose of examining the location and extent of his acute injuries for accident reconstruction purposes. While Polaris states that the Vehicle is no longer available, see Doc. 4 at 9, it has not provided an affidavit from an accident reconstructionist or other qualified individual indicating that an accident reconstruction analysis cannot be performed without Kipp's medical records. Put differently, Polaris has not sufficiently explained why the information it has obtained, or can obtain, from all other sources is not sufficient to support an accident reconstruction analysis.

The question of whether Polaris should be able to obtain information concerning the specific issue of whether alcohol was present in Kipp's blood at the time of the accident presents a closer call.

The undersigned recognizes the importance of Kipp's privacy interest in his medical records.

However, the record does contain information that indicates Kipp consumed some alcohol prior to the accident. This evidence includes Trooper Crawford's testimony that Kipp himself reported drinking beer with Ziegler. Trooper Crawford did not charge Kipp with driving while impaired, but he testified that his decision was due to the fact he did not have a chance to observe Kipp directly to determine whether such a charge was warranted. Trooper Crawford did not testify that he had observed Kipp at an appropriate time following the accident and determined affirmatively that Kipp was not impaired. In addition, while Trooper Crawford explained that the Highway Patrol lab would analyze Zeigler's toxicology results differently than the hospital lab, the hospital lab report suggests that Zeigler did have some alcohol in his system. This information, coupled with Zeigler's recollection that moonshine may have been present at Kipp's residence prior the accident and Zeigler's discovery response citing alcohol as a possible contributing factor to the crash, weighs in favor of some disclosure.

The undersigned also notes that a protective order has been entered in the Michigan Action. See Doc. 4 at 3, Doc. 4-7; Michigan Action, Doc. 25 (Stipulated Protective Order entered on April 20, 2022).

In sum, having closely reviewed the parties' briefing and associated materials, as well as the docket in the Michigan Action, and having closely considered Section 8-53 and applicable authorities, the undersigned concludes that the proper administration of justice requires that certain of Kipp's medical records, as requested by the Subpoena, be produced.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs William Ziegler and Vicki Ziegler's Motion to Transfer Subpoena-Related Motion to Issuing Court (Doc. 5) is **DENIED.**

2. Non-Party Eric Kipp's Motion to Quash Defendant Polaris Industries, Inc.'s Subpoena to Mission Health (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART** and the Subpoena is **MODIFIED** as follows:

    a. To the extent the Subpoena seeks records that reference possible alcohol consumption by Kipp at the time of the accident, the Motion is **DENIED** and Mission is **DIRECTED TO PRODUCE** such records to counsel for the parties and Kipp on or before November 23, 2022. This production shall be subject to the protective order entered in the Michigan Action.

    b. Otherwise, the Motion to Quash is **GRANTED**.

3. This ruling is limited solely to the question of whether, as stated herein, the Subpoena should be quashed or modified pursuant to Rule 45. The undersigned expresses no opinion with regard to any other

issue, including the admissibility of the information to be produced by Mission, which issues are for the trial court in the Michigan Action to address as necessary in its discretion.

Signed: November 15, 2022

W. Carleton Metcalf
United States Magistrate Judge